756 P.2d 939

**STATE of Arizona,
Petitioner/Appellant,**

v.

**GREENLEE COUNTY JUSTICE COURT, PRECINCT 2, and A. Steven Lehman, Justice of the Peace, Respondents/Appellees,**

and

**Jack Leslie WILLCUTT and William Earl Curl, Real Parties in Interest.**

No. 2 CA–CV 88–0056.

Court of Appeals of Arizona, Division 2, Department A.

May 26, 1988.

Joe Albo, Jr., Gila Co. Atty., Globe, for petitioner/appellant.

## OPINION

LACAGNINA, Chief Judge.

The state[1] appeals from the superior court's order denying its petition for special action challenging the justice court's denial of its request for a peremptory change of judge pursuant to Rule 10.2, Ariz.R.Crim.P., 17 A.R.S. The superior court ruled that the affidavit filed by the deputy county attorney setting forth his reasons for the transfer of the cases violated the superior court's order and that "the matters set forth in that affidavit should have been dealt with in a different forum." The state argues that the superior court committed reversible error as follows:

1. The two prosecutors in the Greenlee County Attorney's Office properly utilized Criminal Rule 10.2 in this case.

2. A. Steven Lehman, Justice of the Peace for Greenlee County Justice Court, Precinct 2, failed to follow the procedure established by Rule 10.6, Ariz.R.Crim.P., 17 A.R.S., by ruling on the 10.2 request filed by the deputy county attorney.

3. The superior court erred in its order requiring the prosecutors to submit affidavits supporting a good faith basis for their Rule 10.2 challenges.

We agree and reverse.

## FAILURE TO FILE ANSWERING BRIEF

We note initially that both the respondents/appellees in this case, Greenlee County Justice Court, Precinct 2, and A. Steven Lehman, Justice of the Peace (hereinafter "Judge Lehman" and the real parties in interest have failed to file an answering brief.[2] When an appellant raises debatable issues, the failure to file an answering brief generally constitutes a confession of reversible error in civil cases. *Hecla Mining Co. v. Industrial Commission,* 119 Ariz. 313, 580 P.2d 774 (App. 1978); *Geiler v. Arizona Bank,* 24 Ariz. App. 266, 537 P.2d 994 (1975); *Bulova Watch Co. v. Super City Department Stores of Arizona, Inc.,* 4 Ariz.App. 553, 422 P.2d 184 (1967). However, that may be waived in the discretion of the reviewing court. *Evertsen v. Industrial Commission,* 117 Ariz. 378, 573 P.2d 69 (App.), *approved and adopted,* 117 Ariz. 342, 572 P.2d 804 (1977); *Bugh v. Bugh,* 125 Ariz. 190, 608 P.2d 329 (App.1980). Because we find this is an issue of statewide importance and one which affects counties with smaller populations, we will decide this case on its merits.

## FACTS

At the time the criminal matters at issue in this appeal were pending, the Greenlee County Attorney's Office employed only two prosecutors. Both prosecutors separately filed timely requests for a change of judge in their respective cases pursuant to Rule 10.2, Ariz.R.Crim.P., 17 A.R.S. The respondent denied these requests and stat-

---

1. In this case, Joe Albo, Gila County Attorney, represented the interests of Greenlee County.

2. Normally, in special actions, only the real parties in interest appear. However, in this case, respondents/appellees did appear, represented in superior court; real parties in interest did not appear, although they were served. On appeal, Lehman, through counsel, filed a notice regarding non-filing of brief, stating that he "[could] not in good conscience authorize Greenlee County's expenditure of additional funds in connection with the above-captioned matter."

ed he would set the four criminal matters for trial, citing *State v. City Court of City of Tucson*, 150 Ariz. 99, 722 P.2d 267 (1986). After Judge Lehman affirmed his denial of the request and set the matters for trial, the state filed a petition for special action in Greenlee County Superior Court claiming that Judge Lehman had "failed to exercise discretion which [he] had a duty to exercise; failed to perform a duty required by law as to which [he] .had no discretion; [was] threatening to proceed without or in excess of his jurisdiction or legal authority; and [had] made a determination that was arbitrary, capricious and in abuse of discretion." Following an evidentiary hearing, the superior court filed a minute entry including findings of fact and conclusions of law and ordered both prosecutors to submit affidavits containing "a material and relevant reason for the use of Rule 10.2."

In response to the court's order, the prosecutors filed their respective affidavits as follows:

*Affidavit of William A. Coffeen:*

That I am the County Attorney of Greenlee County, Clifton, Arizona;

That in the cases of *State vs. Dozier* and *State vs. Perry*, affiant and defense counsel had reached an agreement to submit the matter to the court of Precinct No. 1, on the basis of the offense reports and make our respective arguments to the Justice of the Peace of Precinct No. 1. The most expeditious manner to accomplish this was to file a 10.2 Motion. It was not done with a purposeful discriminatory purpose.

*Affidavit of Dennis L. Lusk:*

1. That he is the Chief Deputy Greenlee County Attorney.

2. That he filed Motions for Change of Judge in State v. Willcutt, and [Curl], all of whom are real parties in interest in Greenlee County Superior Court cause no. 2382–A.

3. That he is making this affidavit as a result of being ordered by the Superior Court to explain why the Motions for Change of Judge were filed.

4. That the following are the reasons for filing of the Motions for Change of Judge:

a. That the Respondent Justice of the Peace regularly refuses to take actions that he is required by law to take.

b. That the Respondent Justice of the Peace regularly dismisses cases without notice to either party and without hearing because he feels that there is not sufficient evidence, as admitted in his letter dated April 21, 1987 wherein he stated that a DUI was summarily dismissed because of a .018 blood alcohol reading.

c. That evidence admitted in trials or hearings in front of the Respondent Justice of the Peace occasionally disappears.

d. That contrary to the affidavit of Respondent Justice of the Peace, your affiant has appeared in several contested matters before the Respondent Justice of the Peace (jury trials, court trials, motion to dismiss, no bond hearing) in 1985, 1986 and 1987.

e. That during the course of the above matters the Court showed a complete lack of concern for statutes, precedent cases from superior courts, rules or common practice.

f. That the Respondent Justice of the Peace routinely ignores mandated sentencing requirements.

g. That during the course of jury trials, Respondent Justice of the Peace has allowed, and even fostered, an attitute that detracts from the seriousness of the occasion.

5. That the above reasons for filing of changes of judge are based on the personal knowledge of your affiant and on information conveyed to your affiant from sources believed by your affiant to be reliable.

6. That whether or not the above reasons can be substantiated to be a perponderence [sic] of the evidence in a court of law, your affiant believes them to be true of his ability to adequately represent the people of the State of Arizona.

7. There are other reasons based on personal observation, conversations with other members of the bar who practice in Greenlee County and law enforcement personnel, and practice before the Respondent Judge upon which affiant prefers not to elaborate, but which contributed to the decision to file motions requesting a change of judge.

As to the first affidavit, the superior court found that "the stipulation by defense counsel is a sufficient and proper reason for the transfer." Those two cases are not at issue in this appeal. As to the remaining cases, the superior court denied relief and additionally ordered as follows:

IT IS FURTHER ORDERED that if the deputy county attorney continues to file notices for change of judge in Precinct 2 upon the same grounds, this Court will refer the action to the Supreme Court of this state.

## APPLICATION OF STATE V. CITY COURT

A. Failure of the Justice of the Peace to Follow Rules 10.5 and 10.6

■ In *State v. City Court, supra,* the supreme court set forth the only proper procedure for a justice of the peace when a Rule 10.2 request has been filed:

Once the Notice of Change of Judge has been filed, the procedure under Rule 10.2 is summary and automatic. If the Rule 10.2 request has been filed timely, then "the case shall be transferred immediately to the presiding judge who shall reassign the case to a new judge." Rule 10.5. Once the notice has been filed, the challenged judge may not proceed further in the action, except to make temporary orders as are necessary in the interest of justice before the action is transferred to the presiding judge. Rule 10.6.

Rule 10.2 on its face applies only to cases in the superior court. We have, however, extended the applicability of Rule 10.2 to non-record courts such as the Tucson City Court. *Cain v. City Court of City of Tucson,* 135 Ariz. 96, 98, 659 P.2d 649, 651 (1983).

The right of a criminal defendant to a change of judge without cause is zealously protected and on the basis of fairness extended beyond the superior court.

*State v. Keel,* 137 Ariz. [532] at 534, 672 P.2d [197] at 199 (App.1983).

150 Ariz. at 102, 722 P.2d at 270. In this case, it is undisputed that once the requests were filed, the justice of the peace did not follow this procedure. His written response to the county attorneys involved in these cases states in part as follows:

Until quite recently, this court was under the assumption that there was no legal remedy for wholesale usage of rule 10.2. The court was quite mistaken. I would like to point out to you the case # 18205 of the Arizona Supreme Court that was filed on 30 June 1986. The case clearly speaks to this very issue. Relief was granted to the Tucson Magistrate Court.

I would be more than happy to transfer these cases to the presiding judge in this County until such time as this matter might be further litigated. However, and I quote from the language of the Supreme Court," as to future cases, if the City Prosecutor does not terminate his policy of peremptorily challenging Judge Fajardo in all DWI cases, then we will be forced to suspend indefinitely the availability of Rule 10.2 to the City Prosecutor until such time as we are satisfied that the rule is not being abused by the City Prosecutor or his deputies."

\* \* \* \* \* \*

It has clearly been the policy of the Greenlee County Attorney to utilize the rule to circumvent the court hearing cases for the past three years. The rule has very clearly and very distinctly been abused. Cease. Please. Thank you.

Judge Lehman eventually set trial dates for all four matters. We agree with the state that he acted without legal authority in violation of Rule 10.6 and the supreme court's ruling in *State v. City Court.*

274

## B. *Prosecutor's Use of Rule 10.2*

■ In *State v. City Court*, the supreme court gave two reasons why the prosecutors in that case abused the rules of criminal procedure in their peremptory challenges:

> First, the procedure infringed upon the obligation of each Deputy City Prosecutor to exercise his or her individual professional judgment on a case by case basis. The admitted policy here was to require each deputy as a matter of policy to exercise peremptory challenge to Magistrate Fajardo, regardless of whether the attorney handling the case believed this was mandated. As the Washington Supreme Court has noted:

> > In our view, this fixed formula which requires a particular action *in every case* upon the happening of a specific series of events constitutes an abuse of the discretionary power lodged in the prosecuting attorney.

> *State v. Pettitt*, 93 Wash.2d 288, 296, 609 P.2d 1364, 1368 (1980) (emphasis in original).

> Second, the policy amounted to an improper attempt to influence a judge in his judicial decisions. The effect of this policy was to bring pressure upon Magistrate Fajardo. We agree with the dissenting opinion of Justice Tobriner of the California Supreme Court who stated:

> > In my view, the use of "blanket" challenges under section 170.6 to disqualify a judge because of his judicial philosophy or his prior rulings on questions of law seriously undermines the principle of judicial independence and distorts the appearance, if not the reality, of judicial impartiality.

> *Solberg v. Superior Court*, 19 Cal.3d 182, 205, 137 Cal.Rptr. 460, 475, 561 P.2d 1148, 1163 (1977), (TOBRINER, J., dissenting).

> The hope of the City Prosecutor was that Judge Fajardo would make rulings favorable to his client. This is always the hope of an advocate and it can most often be realized by adequate preparation and professional exercise of a lawyer's skills. The Tucson City Prosecutor's policy with its attendant effects was an attempt to intimidate not only Magistrate Fajardo but by example the entire Tucson City Court. As such the policy was an abuse of the rules and a threat to the independence and integrity of the judiciary which cannot be allowed.

> We hold that the blanket order of the City Prosecutor that Magistrate Fajardo be peremptorily challenged was not only an improper restriction on the professional independence of the deputy city prosecutors as well as threatening the independence of the judiciary, but an abuse of Rule 10.2 which significantly frustrated its purpose.

150 Ariz. at 102–103, 722 P.2d at 270–271.

It is undisputed that there was no policy in the Greenlee County Attorney's Office regarding challenges to Judge Lehman. Each peremptory challenge that occurred in this case was made individually by each prosecutor as an exercise of his individual professional judgment. Second, there is absolutely no evidence nor any assertion by either party that the exercise of the peremptory challenges in this case "amounted to an improper attempt to influence a judge in his judicial decisions." 150 Ariz. at 102, 722 P.2d at 270. There was no attempt to intimidate, to re-educate or to in any way threaten the independence of the particular justice of the peace. In addition, the individual challenges in this case were not abuses of the rule but rather examples of the liberal rule of disqualification allowed under Rule 10.2. *Id.*

## C. *Superior Court's Order*

■ The supreme court in *State v. City Court* found that the chief magistrate in that case did not have the authority to require the prosecutors to make an avowal of good faith when they filed their Rule 10.2 challenges:

> In the instant case, the court required the prosecutor to make an avowal of good faith and independent professional judgment before they could avail themselves of the right of a peremptory challenge to the judge. The order was in effect a local rule which was not ap-

proved by this court and is of no force and effect. *See also Mitchell v. Superior Court,* 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984).

150 Ariz. at 103, 722 P.2d at 271. The superior court in this case similarly had no authority to require such an avòwal.

## CONCLUSION

 In the absence of any policy requiring a deputy prosecutor to exercise a peremptory challenge "regardless of whether the attorney handling the case believed this was mandated," *State v. City Court, supra,* 150 Ariz. at 102, 722 P.2d at 270, and absent any evidence that the use of the peremptory challenges was an attempt to threaten the independence and integrity of the particular judge, we cannot say that the use of peremptory challenges under the facts of this case constituted an abuse of the rules of criminal procedure.[3]

Reversed and remanded for proceedings consistent with this opinion.

HOWARD, P.J., and HATHAWAY, J., concur.

---

3. The supreme court was aware when it issued its decision in *State v. City Court* that the situation present in this case is common in many counties with smaller populations, that is, where the prosecutor's office consists of one or two prosecutors who have available to them only one or two justice court precincts and superior court divisions.